UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00628-GNS

OHIO RIVER VALLEY ASSOCIATES, LLC                                           PLAINTIFF

v.

PST SERVICES, INC.                                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction (DN 4) and Defendant's Motion to Conduct Limited Discovery (DN 7). For the reasons set forth below, Plaintiff's motion is **GRANTED**, and Defendant's motion is **DENIED**.

### I.      BACKGROUND

This action centers on the efforts of Plaintiff Ohio River Valley Associates, LLC ("ORVA") to preliminarily enjoin Defendant PST Services, Inc. ("PST") from arbitrating the issue whether ORVA breached the "Master Services Agreement" ("Agreement")—a contract that PST entered into with One Management Services Corporation, LLC ("One Management"). (Pl.'s Mot. Prelim. Inj. 1-2, DN 4). By way of background, ORVA is an organization that provides management services to healthcare providers. (Arbitration Demand ¶ 7, DN 1-3). ORVA then delegated certain of its duties to One Management, an organization that some of ORVA's members allegedly own. (Verified Compl. ¶ 7, DN 1; Arbitration Demand ¶ 6, DN 1-3). One Management, in turn, entered into the Agreement with PST. (Verified Compl. ¶ 8).

Under the Agreement, PST agreed to provide services to management services organizations ("MSOs"), such as practice management and billing for medical practices, as a

1

subcontractor of One Management—i.e., as a sub-subcontractor of ORVA.  Additional medical practices were added to the Agreement through addenda.  The Agreement states that "each MSO shall have the rights and obligations of [One Management] *under its respective MSO Addendum*, as well as with respect to provisions [in the MSA] that expressly relate to the MSOs."  (MSA 1 (emphasis added)).  The Agreement further provides, however, "[n]otwithstanding the foregoing, [PST] [] shall exercise its rights vis-à-vis MSOs solely through [One Management] and, conversely, the MSOs shall exercise their rights vis-à-vis [PST] [] solely through [One Management]."  (MSA 1).  The Agreement also contains an arbitration clause, providing that "[i]f a dispute, controversy or claim concerning this [MSA] cannot be satisfactorily resolved by the parties, such dispute will be settled by binding arbitration . . . ."  (MSA § 4.1.6).

Addendum #1 modifies the Agreement between One Management and PST by adding the medical practice of ONE Anesthesia, PLLC to the Agreement.  (MSO Addendum #1, at 1, DN 1-2).  This addendum lists ORVA's name between the document title "MSO ADDENDUM #1" and the caption and appears to have been signed on behalf of One Management by Dr. Thomas Neff ("Dr. Neff").  (MSO Addendum #1, at 2).  Below Dr. Neff's signature, in the blank for "Title" is printed "Chairman, ORVA."  (MSO Addendum #1, at 2).

Nearly two years after One Management and PST finalized the Agreement, ORVA—apparently dissatisfied with PST's services—provided notice that PST had breached the Agreement.  (Arbitration Demand ¶ 40).  ORVA then purported to terminate its relationship with PST.  (Arbitration Demand ¶ 47).  As a result, PST filed an arbitration demand with the American Arbitration Association, naming One Management and ORVA as respondents.[1]

---

[1] PST also named as a party to the arbitration proceedings Great Lakes Practice Solutions, LLC—which was added to the Agreement through Addendum #2.  (Arbitration Demand ¶ 1; MSO Addendum #2, DN 1-2).

(Arbitration Demand ¶ 1). In its demand, PST alleged, *inter alia*, that ORVA breached the Agreement (and Addendum #1) when it terminated PST without following the termination procedures set forth in the Agreement and allegedly incorporated into Addendum #1. (Arbitration Demand ¶¶ 40-49; MSA § 4.2; MSO Addendum #1, § 1). Thereafter, ORVA filed the Verified Complaint seeking a declaratory judgment stating that it is neither a party to the Agreement nor bound by the Agreement's arbitration clause. (Verified Compl. 4). ORVA also asked this Court to permanently enjoin PST from pursuing any arbitration proceedings against it. (Verified Compl. 5).

Presently, ORVA moves the Court to preliminarily enjoin the arbitration proceedings that PST has initiated against it. (Pl.'s Mot. Prelim. Inj. 1). In its motion, ORVA argues, *inter alia*, that it is entitled to an order enjoining the arbitration proceedings because it is neither a party nor signatory to any agreement with PST that contains an arbitration clause. (Pl.'s Mot. Prelim. Inj. 5-14). In response, PST asserts that no preliminary injunction is warranted because: (1) ORVA "expressly adopted the terms of the [Agreement]"—including its arbitration clause—when Dr. Neff signed the addendum in his capacity as ORVA's Chairman, and (2) even if ORVA never agreed to the Agreement's arbitration clause, ORVA should nonetheless be estopped from denying that it is subject to that clause because it has received substantial benefits under the Agreement. (Def.'s Opp'n Prelim. Inj. 7-11, 14-15). PST also moves the Court to permit it to engage in discovery regarding the circumstances under which Dr. Neff signed Addendum #1. (Def.'s Mot. Conduct Limited Disc. 1-2, DN 7). Both motions are ripe for adjudication.

## II. DISCUSSION

### A. PST's Motion to Conduct Limited Discovery

PST argues that it is entitled to discovery on the issue whether Dr. Neff, ORVA's Chairman, signed Addendum #1. (Def.'s Mot. Conduct Limited Disc. 1-2). PST claims that, if evidence shows that Dr. Neff signed the addendum in his capacity as ORVA's Chairman, then ORVA will be bound to Addendum #1 and the Agreement's provisions incorporated therein—including its arbitration clause. (Def.'s Br. Supp. Mot. Conduct Limited Disc. 1-3, DN 7-2). Thus, PST concludes, such evidence could help PST support its contention that ORVA is bound by the arbitration clause and, therefore, unlikely to succeed on the merits of its declaratory judgment action.

PST believes that it is at a disadvantage in this proceeding because it cannot confirm the capacity in which Dr. Neff signed Addendum #1. For the purpose of ORVA's present motion, the Court will assume that Dr. Neff signed Addendum #1 on behalf of ORVA and that ORVA is bound to the terms thereof. Given that the Court will address ORVA's motion under this assumption, the Court sees no justification for permitting PST to engage in discovery at this point. Therefore, PST's motion to conduct discovery is denied.

### B. ORVA's Motion for Preliminary Injunction

ORVA seeks an order preliminarily enjoining PST from submitting its claims against OVRA to arbitration. Under Sixth Circuit precedent, the Court must balance four factors in determining whether ORVA is entitled to the relief it seeks: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v.*

*City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012) (citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.,* 511 F.3d 535, 542 (6th Cir. 2007)). Though the first inquiry will often be dispositive, the Court will nonetheless address each inquiry in turn. *See Jones v. Caruso,* 569 F.3d 258, 265 (6th Cir. 2009) (noting that the first inquiry is often outcome-determinative).

1. ***Likelihood of Success on the Merits***

The first factor requires the movant to show a strong likelihood that she will succeed on the merits of her case. *Certified Restoration*, 511 F.3d at 543 (citations omitted). To meet this burden, the movant need not "prove [her] case in full"; rather, the movant need only "raise[] questions going to the merits [that are] so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citation omitted).

The likelihood that ORVA will succeed here in its declaratory judgment action hinges on whether PST has any basis for compelling ORVA to arbitrate. Thus, given that arbitration "is a matter of consent, not coercion," the operative question is whether ORVA agreed to arbitrate with PST claims arising from the Agreement. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

In answering this question, the Court initially observes that the only writing pertinent to this dispute containing an arbitration clause is the Agreement. That contract explicitly provides that it is "between PST Services, Inc. . . . and One Management Services Company, LLC . . . ." (MSA 1). ORVA is not a party to the Agreement. (*See* MSA 1). As such, ORVA is not directly subject to the Agreement's arbitration clause. *See Redman v. Allen*, No. 05 C 6818, 2006 WL 3227890, at *2 (N.D. Ill. Nov. 3, 2006) ("As a general rule, parties who have not signed an

arbitration agreement are not bound by it." (citation omitted)). Further, though the MSA states that MSOs "shall have the same rights and obligations" as One Management "with respect to provisions . . . that expressly relate to the MSOs," the arbitration clause makes no mention of any MSO. (MSA 1, 5). Moreover, the Agreement explicitly provides that PST "shall exercise its rights vis-à-vis MSOs solely through [One Management] and, conversely, the MSOs shall exercise their rights vis-à-vis [PST] [] solely through [One Management]." (MSA 1). This provision in conjunction with the arbitration clause clearly establishes that the agreement to arbitrate is limited to PST and One Management.

The Sixth Circuit has recognized five theories under which a non-party or non-signatory to an arbitration agreement may nonetheless be bound to arbitrate disputes arising from it: "(1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (citing *Thomson-CSF v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995)). Common law contract principles—as interpreted by Kentucky courts—govern the applicability of those theories in this case.[2] *See id.* (noting that "nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles." (citation omitted)). PST contends that two of these theories—incorporation by reference and estoppel—are applicable in this action.

### a. Incorporation by Reference

Under the doctrine of incorporation by reference, a signatory to an arbitration agreement may compel arbitration against a non-party to that agreement if the party enters into a separate

---

[2] Though the Agreement contains choice-of-law provision indicating that Delaware law applies to disputes regarding the Agreement, the parties seems to agree that ORVA—as a non-party and non-signatory to the Agreement—is not subject to that provision. In addition, it appears that ORVA and PST agree that under Kentucky's conflicts of law analysis, Kentucky contract law governs the analysis of the question whether ORVA may be bound by the Agreement's arbitration clause. (*See* Pl.'s Mot. Prelim. Inj. 10 n.2; Def.'s Opp'n Prelim. Inj. 7-9 n.4). Accordingly, the Court will apply Kentucky contract law.

agreement with the non-party that incorporates the existing arbitration clause. *See Thomson-CSF*, 64 F.3d at 777 (citations omitted). Under Kentucky law, however, an agreement only incorporates another contract's terms if it contains "clear language [] express[ing] the incorporation of other terms and conditions[.]" *Dixon v. Daymar Colls. Grp., LLC*, 483 S.W.3d 332, 344 (Ky. 2015) (internal quotation marks omitted) (alterations in original) (citation omitted).

PST claims that, when Dr. Neff signed Addendum #1 to the Agreement in his capacity as ORVA's Chairman, he "*explicitly* incorporated all consistent terms and conditions of the [Agreement]" into that addendum, thereby binding ORVA to the incorporated terms. (Def.'s Opp'n Prelim. Inj. 14). In reaching this result, PST relies on the following language from Addendum #1:

> In the event any term or condition of this MSO Addendum is inconsistent with any term or condition of the [Agreement], the terms of this MSO Addendum will control. Except as stated above, all terms of the [Agreement] shall remain in full force and effect.

(MSO Addendum #1, ¶ 4). The problem with PST's reasoning is that Addendum #1, on its face, only changes the terms of the Agreement—a contract solely between PST and One Management. Nothing in Addendum #1 purports to *add* ORVA as an additional party to the contract or substitute ORVA for One Management. Further, the parties—i.e., PST and One Management—warranted their authority to execute the Addendum and One Management had the contract signed by a representative (Dr. Neff) just below the printed name of "One Management Services Company, LLC." Dr. Neff's signature thus operates to bind One Management (not ORVA) to the terms of Addendum #1.

The language contained in Paragraph 4 of Addendum #1 is far from clear language incorporating the Agreement's arbitration clause; rather, that provision simply states that, to the

extent Addendum #1 conflicts with the Agreement, the Addendum controls. (*See* MSO Addendum #1, ¶ 4); *see also Dixon*, 483 S.W.3d at 344 (alteration in original) (citation omitted). Addendum #1 contains no explicit requirement that ORVA arbitrate disputes with PST. Most importantly, the Addendum does nothing to alter the provision in the Agreement that PST is to exercise its rights *solely* against One Management. Under these circumstances, ORVA is not subject to the Agreement's arbitration clause under the doctrine of incorporation by reference.

### b. Estoppel

PST also asserts that ORVA should be estopped from denying that it is subject to the Agreement's arbitration clause pursuant to principles of estoppel. (Def.'s Opp'n Prelim. Inj. 14-15). The Sixth Circuit and Kentucky courts agree that "a nonsignatory may be bound to an arbitration agreement under an estoppel theory when the nonsignatory seeks a *direct* benefit from the contract while disavowing the arbitration provision." *See Javitch*, 315 F.3d at 629; *accord Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831-32 (Ky. App. 2009). This rule is based on the common-sense principle that an individual who is not a party to a contract "may not choose to accept the benefit of [that] contract[] while simultaneously avoiding the dispute resolution mechanism set out" therein. *Olshan*, 276 S.W.3d at 831-32.

PST points to two provisions of the Agreement, both of which it contends confer valuable benefits directly to ORVA. (Def.'s Opp'n Prelim. Inj. 14). The first is captioned "Initial Consideration Payment"; that provision states: "[PST] will pay [One Management] a payment of [extracted] . . . ." (MSA § 5.1.4). The second provision—titled "MSO Payments for Service Schedule 1 to [One Management]"—states that, though ORVA may "be eligible for [certain] payments" under some circumstances, the language of the contract indicates that those "[certain] payments" are made to One Management rather than any individual MSO. (MSA §§ 5.2, 5.2.1).

8

PST's position is untenable. As an initial matter, the Court notes that other circuits have questioned whether the estoppel exception is applicable where, as here, a signatory to an arbitration agreement seeks to compel a non-signatory to arbitrate claims arising out of the agreement. *See Thomson*, 64 F.3d at 779. Further, Kentucky courts have only applied the estoppel exception in situations where a non-signatory third-party to an arbitration agreement *has filed suit against the signatory* for claims arising out of the contract. ORVA in this instance has not filed any claims in this matter. *See Olshan*, 276 S.W.3d at 831 (noting that plaintiffs "decision to seek warranty repairs arising under [contracts to which they were not parties] binds them to the arbitration provisions contained therein"). Nonetheless, even if the estoppel exception applies, it does not help PST. Neither of the above-quoted provisions directly benefit ORVA. Rather, both provisions require PST to confer a direct benefit to One Management. (MSA §§ 5.2, 5.2.1). Thus, to the extent ORVA has benefited from the Agreement, it has done so as a result of its separate arrangements with One Management and only indirectly from the Agreement. Thus, the estoppel exception does not subject ORVA to the MSA's arbitration clause. *See Thomson-CSF*, 64 F.3d at 779 (rejecting the defendants' estoppel argument because the plaintiff received no direct benefit from the contract).

ORVA never entered into a contract with PST agreeing to arbitrate any claims with PST. As such, there is a strong likelihood that ORVA will prevail in its declaratory judgment action. Accordingly, this factor weighs in favor of issuing a preliminary injunction.

  2. ***Irreparable Injury***

"[T]he second factor that a court must consider when deciding whether to issue a preliminary injunction is whether the plaintiff will suffer irreparable injury without the injunction." *Certified Restoration*, 511 F.3d at 550 (citation omitted). "A plaintiff's harm from

9

the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citing *Basicomputer Corp v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)).

Here, ORVA will suffer irreparable harm if it is forced to arbitrate PST's claims against it. The Sixth Circuit has held that "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed," and forcing ORVA to arbitrate claims which it has not agreed to arbitrate would necessarily deprive it of its constitutional right to a jury trial. *See Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). Therefore, irreparable injury is presumed in this case and, because PST has not rebutted this presumption, this factor also weighs in favor of issuing a preliminary injunction.

### 3. *Remaining Factors*

The final factors—"whether the issuance of the injunction would cause substantial harm to others" and "whether the public interest would be served by the issuance of the injunction"— militate in favor of issuance of a preliminary injunction. *Certified Restoration*, 511 F.3d at 550–51 (internal quotations omitted) (citation omitted). Contrary to PST's assertions, no one— including PST, itself—will be harmed in the event the Court issues an injunction.[3] Further, the Court finds that the issuance of a preliminary injunction in this matter will serve (or at least not diminish) two public interests: freedom of contract and open access to federal courts. Indeed, the general rule that "parties have complete freedom to enter into a contract" would be impaired if the Court were to deny ORVA's request for preliminary injunctive relief, as ORVA would be forced to participate in arbitration proceedings for which it never contracted. *See Westlake*

---

[3] PST claims that it will suffer substantial harm "should it be required to litigate in federal court a dispute covered by a valid arbitration provision." (Def.'s Opp'n Prelim. Inj. 16). That argument, however, rests on the mistaken assumption that ORVA is a party to the arbitration agreement.

*Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 947, 953 (W.D. Ky. 2007) (citation omitted). And as a sister court has held, "[t]he public interest is not served by" forcing non-consenting parties to arbitration, thereby "needlessly barring access to the courts." *See Raytheon Eng'rs & Constructors, Inc. v. SMS Schloemann-Siemag Akiengesellschaft*, No. 99 C 7771, 2000 WL 420866, at *3 (N.D. Ill. Mar. 16, 2000). Accordingly, these factors weigh in ORVA's favor.

In sum, the Court finds that all four factors relevant to determining whether a preliminary injunction should issue weigh in favor of granting such an injunction in this case. Therefore, the Court will grant ORVA's motion for a preliminary injunction.

### III.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion to Conduct Limited Discovery (DN 7) is **DENIED**.

2. Plaintiff's Motion for Preliminary Injunction (DN 4) is **GRANTED**, and PST Services, Inc. is hereby **ENJOINED** from proceeding in arbitration against Ohio River Valley Associates, LLC.

**Greg N. Stivers, Judge**
**United States District Court**
February 6, 2018

cc: counsel of record